UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Brenda Trudnak

   v.                                         Civil No. 17-cv-195-LM
                                              Opinion No. 2018 DNH 091
Nancy A. Berryhill, Acting
Commissioner of Social Security


**O R D E R**

Brenda Trudnak seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits. Trudnak moves to reverse the Acting Commissioner's decision, contending that the Administrative Law Judge ("ALJ") erred by failing to perform a function-by-function assessment for purposes of determining her residual functional capacity, and by failing to determine the medical necessity of her assistive devices. The Acting Commissioner moves to affirm. For the reasons explained below, the court remands this case to the Acting Commissioner for further proceedings.

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found

facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work

setting despite her limitations caused by impairments, id.
§ 404.1545(a)(1), and her past relevant work, id.
§ 404.1520(a)(4)(iv)).  If the claimant can perform her past
relevant work, the ALJ will find that the claimant is not
disabled.  See id.  If the claimant cannot perform her past
relevant work, the ALJ proceeds to Step Five, in which the ALJ
has the burden of showing that jobs exist in the economy which
the claimant can do in light of her residual functional capacity
assessment.  See id. § 404.1520(a)(4)(v).

## BACKGROUND[1]

On March 25, 2014, Trudnak applied for disability insurance benefits, claiming a disability that began on June 10, 2013.  She was 48 years old at the time of her application, had a high school education, and had previously worked as a licensed nursing assistant ("LNA").  Trudnak alleged that she was disabled because of lower-back problems and an injured left leg, which arose from an incident at work where Trudnak pulled her left leg while moving a patient.

---

[1] A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 14).

I. <u>Record Evidence</u>

On March 17, 2016, a hearing before an ALJ was held on Trudnak's application for benefits. Trudnak was represented by an attorney and testified at the hearing. Michael La Raia, a vocational expert, appeared and testified by phone.

In order to provide some context, the court summarizes relevant portions of the record. Generally, Trudnak presented evidence to show that, as a result of her lower-back problems and the symptoms resulting therefrom, she had extremely limited mobility and could not stand or walk for even short periods of time.

On this question, the medical records are mixed. Some records show that, since June 2013, Trudnak has had significant pain in her back and left leg, which limits her ability to walk and stand. Over the years since her accident, Trudnak reported and sought treatment for these medical issues, and she has variously used a cane, a walker, and crutches to ambulate and perform daily activities. In addition, at the hearing, Trudnak testified about her physical limitations in her current part-time job as a linen folder. Trudnak testified that, during a 7.5 hour workday, she alternates between standing and sitting every twenty minutes, and she takes approximately four thirty-minute breaks in order to lie down in her van.

4

On the other hand, there are medical records which indicate that, since 2013, Trudnak has been able to ambulate without assistance, and which arguably show that Trudnak's alleged functional limitations are more intermittent than continuous.

The record also contains a number of evaluations completed by various medical professionals regarding Trudnak's capacity to work. In September 2014, Louis Rosenthall, M.D., the state agency consultant, completed an RFC assessment. He opined that Trudnak could only perform sedentary work, could stand or walk for up to two hours per eight-hour workday, and required a cane throughout the workday. In February 2016, Dennis Badman, M.D., completed an RFC assessment, in which he opined that Trudnak could only stand or walk for less than two hours per workday.

II. ALJ's Decision

On July 8, 2016, the ALJ issued an unfavorable decision. The ALJ found that Trudnak had severe impairments due to lumbar radiculitis and spondylosis, along with non-severe impairments due to obesity, bilateral carpal tunnel syndrome, alcohol abuse, and a middle finger trigger release surgery. The ALJ found that Trudnak's impairments did not meet any listed impairments.

The ALJ then determined that Trudnak had the residual functional capacity to do light work, as defined by 20 C.F.R. § 404.1567(b). In reaching this conclusion, the ALJ determined

that Trudnak's physical abilities were more significantly curtailed in the immediate aftermath of her June 2013 injury. The ALJ found that Trudnak's condition improved within one year, but that her remaining lower-back problems and impairments limited her to performing light work. The ALJ did not adopt Dr. Badman's RFC assessment. The ALJ gave "limited weight" to Dr. Rosenthall's evaluation "to the extent that it reflects [Trudnak's] abilities immediately after the alleged onset date," but the ALJ found that "her condition improved within 12 months" such that she could perform light work. Admin. Rec. at 29. The ALJ stated that she based this conclusion on Trudnak's testimony, the "objective evidence in the form of MRI results, and such documentation of the . . . treatment and examination findings as have been provided to this proceeding." Id. at 29. The ALJ did not rely on any other expert evaluation to reach this conclusion.

Based on that RFC finding, the ALJ determined that Trudnak could not perform her past relevant work as a LNA, but that, in light of the medical-vocational guidelines, she could perform other jobs existing in the national economy. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.14, .21. Therefore, the ALJ found that Trudnak was not disabled within the meaning of the Social Security Act. The Appeals Council denied Trudnak's

6

request for review, making the ALJ's decision the Acting Commissioner's final decision.

**DISCUSSION**

In support of her motion to reverse the Acting Commissioner's decision, Trudnak argues that the ALJ erred by (1) failing to perform a function-by-function assessment of Trudnak's physical abilities; and (2) failing to determine whether any of Trudnak's assistive devices—her cane, walker, or crutches—were medically necessary. The Acting Commissioner moves to affirm. The court examines each argument in turn.

I. RFC for Light Work

Trudnak contends that the ALJ failed to perform a function-by-function assessment in making the RFC finding. Trudnak asserts that a more developed explanation was necessary in this case, given the contrary evidence that her limitations on standing, sitting, and walking would not permit her to perform light work. The Acting Commissioner responds that the ALJ adequately explained her reasoning regarding Trudnak's functional limitations, and that such reasoning is supported by substantial evidence.

As noted above, a claimant's RFC is an assessment of the most that a claimant can still do despite limitations. 20 C.F.R.

§ 404.1545(a)(1). "The ALJ is responsible for determining a claimant's RFC based on all relevant evidence in the record. In making that determination, the ALJ is responsible for resolving any conflicts in the evidence." St. Laurent v. Berryhill, No. 17-cv-053-LM, 2018 WL 1521854, at *3 (D.N.H. Mar. 28, 2018) (citation omitted). Furthermore, "the ALJ must specify the evidentiary basis for his RFC determination." Canfield v. Apfel, No. Civ. 00-267-B, 2001 WL 531539, at *5 (D.N.H. Apr. 19, 2001).

The Social Security Administration specifically requires that the ALJ conduct "a function-by-function consideration of each work-related ability before expressing the RFC in terms of the exertional categories of 'sedentary,' 'light,' and so forth." Gallagher v. Astrue, No. 08-cv-163-PB, 2009 WL 929923, at *7 (D.N.H. Apr. 3, 2009) (citing SSR 96-8p, 1996 WL 374184, at *3 (1996)). Such an analysis is important because it ensures that an ALJ does not "overlook some of an individual's limitations or restrictions, which could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work and an erroneous finding that the individual is not disabled." Beaune v. Colvin, No. 14-cv-174-PB, 2015 WL 4205251, at *2 (D.N.H. July 10, 2015) (internal brackets and quotation marks omitted).

Nevertheless, "courts have held that a failure to [perform a full function-by-function assessment] will not invalidate the decision if the functional limitations can be inferred from the record as a whole." Id. at *3. Thus, "the relevant inquiry should be whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." Id. (internal quotation marks omitted); see also MacKenzie v. Colvin, No. 15-cv-198-JD, 2016 WL 727115, at *3 (D.N.H. Feb. 23, 2016) ("[A]n ALJ's failure to assess all functional limitations . . . is harmless if the functional assessment is provided in the record.").

Here, the court concludes that the ALJ's RFC assessment is erroneous both with respect to Trudnak's limitations on walking and standing, and with respect to the overall conclusion that Trudnak could perform light work.

A. Trudnak's Limitations on Walking and Standing

As noted above, the ALJ found that Trudnak could perform the full range of light work. A job is in the category of light work "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). As further explicated by Social Security Ruling 83-10, "the full range of light work requires standing or walking, off and on, for a total

9

of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6.

It is not completely clear what evidence the ALJ relied on to determine that Trudnak had the requisite abilities to stand and walk during the workday. The ALJ cited only the following evidence: (1) at an emergency room visit for left-leg swelling in July 2013, Trudnak reported that she had been "standing outside all day at the races" the day before, Admin. Rec. at 416; and (2) Trudnak's job as a linen folder requires that she stand or walk "as much as 6 hours per day," id. at 29.

Without additional explanation, the first reason is insufficient. The record shows that, one month after her work injury, Trudnak visited an emergency room complaining of pain and swelling in her left leg. Trudnak reported to the physician that she had been "standing outside all day at the races yesterday." Id. at 416. From this, the ALJ apparently found that Trudnak could stand and walk for 6 hours per day on a regular and continuing basis. See SSR 96-8p, 1996 WL 374184, at *2 ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."). The court fails to see the reasonable connection between Trudnak standing at an event on one occasion

10

and the broad conclusion that she can stand and walk for 6 hours per workday, especially given that the event precipitated an emergency-room visit due to swelling and pain.

The second reason appears, on its face, to be a misstatement of the evidence.  At her current part-time job as a linen folder, Trudnak works up to 7.5 hours per day.  However, Trudnak testified that she alternates between standing and sitting every twenty minutes, and she takes approximately four thirty-minute breaks in order to lie down in her van.  Thus, the time that she spends standing or walking is far less than six hours per workday.  Indeed, the ALJ noted this testimony in the decision, but nonetheless concluded without elaboration that Trudnak stood or walked for as much as six hours per day as a linen folder. The ALJ's decision reveals no rationale for this contrary finding.  To be sure, the ALJ was free to credit or not credit Trudnak's description, but the ALJ could not "reject evidence for no reason or the wrong reason."  Hildalgo-Rosa v. Colvin, 40 F. Supp. 3d 240, 247 (D.P.R. Aug. 28, 2014).  Therefore, the ALJ's finding relating to Trudnak's limitations on walking and standing is not supported by substantial evidence.

B. <u>ALJ's Overall RFC Assessment</u>

The ALJ's overall conclusion that Trudnak could perform light work appears to be based on the combination of Dr. Rosenthall's 2014 evaluation and Trudnak's subsequent functional improvements. That is, the ALJ adopted Dr. Rosenthall's opinion as the baseline for Trudnak's functional abilities after her June 2013 injury—sedentary work and a limit of two hours of walking or standing—and then concluded that Trudnak's abilities had subsequently improved to the point that she could perform light work. The ALJ stated that this RFC finding "is supported by [Trudnak's] testimony regarding low back and left leg pain, the objective evidence in the form of MRI results, and such documentation of [Trudnak's] treatment and examination findings." Admin. Rec. at 29.

The problem is that the ALJ's conclusion is not tethered to any expert opinion or evaluation. Generally, an expert "is necessary to provide a functional capacity assessment based on medical data." McGowen v. Colvin, No. 15-cv-329-JD, 2016 WL 1029480, at *7 (D.N.H. Mar. 15, 2016). Although an ALJ may render "common-sense judgments about functional capacity based on medical findings," <u>id.</u>, in this case the ALJ appears to have relied on raw medical data from Trudnak's physical examinations to reach the conclusion that Trudnak's functional abilities had

12

improved to the level that she could perform light work. "This is something the ALJ cannot do." Wallace v. Colvin, No. 2:12-CV-578, 2013 WL 1346559, at *6 (N.D. Ala. Apr. 1, 2013) (concluding that ALJ inappropriately considered "the doctor's reports regarding [claimant's] range of motion, the results of his straight leg raise tests, and the findings about his motor strength and sensory functioning,"); see also Willey v. Colvin, No. 15-cv-368-JL, 2016 WL 1756628, at *6 (D.N.H. Apr. 7, 2016), R & R approved by 2016 WL 1733444 (D.N.H. Apr. 29, 2016).

Moreover, the ALJ's vague allusions to Trudnak's testimony, the "objective evidence," and the other documentation in the record do not constitute an adequate explanation that would permit meaningful judicial review to "determine whether the administrative decision is based on substantial evidence." Crosby v. Heckler, 638 F. Supp. 383, 385-86 (D. Mass. 1985). Consequently, a remand is required for further explanation and investigation. See id.

For these reasons, the court remands the case for further consideration of Trudnak's RFC and, once determined, of her ability to perform work existing in significant numbers in the national economy.

II. <u>Assistive Devices</u>

Trudnak next argues that the ALJ never explicitly determined whether her various assistive devices—a cane, crutches, and walker—were medically necessary. Trudnak cites Social Security Ruling 96-9p for the proposition that the ALJ must make such a determination when the record indicates that the claimant relies on a handheld assistive device. See SSR 96-9p, 1996 WL 374185, at *7 (1996). The Acting Commissioner responds that the ALJ did make such a determination and that it was supported by substantial evidence.

The court declines to address this issue. Given the court's remand order, as well as the fact that Trudnak's use of assistive devices is related to and intertwined with the general RFC determination, the court considers it appropriate for the ALJ to consider this issue again as part of the overall reconsideration of the RFC assessment.

**CONCLUSION**

For the foregoing reasons, the Acting Commissioner's motion to affirm (doc. no. 12) is denied, and Trudnak's motion to reverse (doc. no. 11) is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of

the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 3, 2018

cc: Counsel of Record